# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-IA-01586-SCT

*WILLIAM O'BRIEN JENKINS, JR. a/k/a BUDDY JENKINS*

*v.*

*MARGARET B. OSWALD a/k/a ELAINE OSWALD*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/23/2007 |
| TRIAL JUDGE: | HON. CYNTHIA L. BREWER |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | JAMES W. CRAIG |
| | DALE DANKS, JR. |
| ATTORNEYS FOR APPELLEE: | BETTY SLADE DEROSSETTE |
| | VANN FREDRIC LEONARD |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED AND REMANDED - 03/05/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1.    This interlocutory appeal arises from the order of the Chancery Court of Madison County, Mississippi, which denied William O'Brien Jenkins, Jr.'s motion to dismiss for failure to comply with the 120-day service-of-process provision of Mississippi Rule of Civil Procedure 4(h).  For the reasons discussed herein, this Court affirms.

**FACTS AND PROCEEDINGS**

¶2.    On July 18, 2002, Margaret B. Oswald filed a complaint for preliminary injunctive and other relief in the chancery court against Jenkins, among others.[1]  On August 3, 2002, Oswald caused an alias summons to be issued for service upon Jenkins at a Florida address. No return of service of process was filed as to this alias summons, and no motion to extend the time for serving process was filed.  On November 28, 2006, a second alias summons was issued for service upon Jenkins.  On January 10, 2007, this alias summons was served on Jenkins in Rankin County.

¶3.    Thereafter, Jenkins moved under Mississippi Rule of Civil Procedure 12(b) to quash process and dismiss the complaint.  Jenkins's motion relied upon Mississippi Rule of Civil Procedure 4(h), which requires that process be served within 120 days of the filing of the complaint, absent good cause.  The chancery court subsequently conducted a hearing on the motion, which included testimony from both parties.

¶4.    Oswald testified that, after filing her complaint in July 2002, she unsuccessfully attempted to serve a copy of the complaint, together with the original summons, at Jenkins's Madison County address.  Thereafter, Oswald filed an official inquiry with the United States Postal Service ("USPS") and received notice that Jenkins had obtained a new mailing address in Bradenton, Florida.  On August 3, 2002, Oswald caused an alias summons to be issued for service upon Jenkins at the Florida address.  According to Oswald, who was employed as a legal assistant by her attorney in this matter, the law office paid a process server in Florida

---

[1]Jenkins is the only party who petitioned this Court for an interlocutory appeal.

to serve Jenkins at that address, but the process server was unable to locate him. Oswald produced no invoice or other documentation to corroborate this effort.

¶5.     Between 2003 and 2005, Oswald conducted monthly internet searches via "Google" in an attempt to locate another address for Jenkins.  These searches proved unsuccessful. According to Oswald, she periodically received reports from Jenkins's friends who had seen him locally.  With the assistance of others, Oswald attempted to discover if Jenkins had re-obtained a Mississippi driver's license with a new address.  Each such check revealed that Jenkins had only a Florida driver's license.

¶6.     In 2006, Oswald testified that she ran into Jenkins while purchasing barbecue in Rankin County.  According to Oswald, she confronted Jenkins and told him that they needed to resolve the issues surrounding the subject litigation, and they exchanged cell phone numbers.  Oswald claimed that the number she received from Jenkins was inactive.  Shortly thereafter, Oswald saw Jenkins on a local television commercial promoting a new modular home company.  Oswald immediately contacted the Mississippi Secretary of State's Office and obtained a business address for Jenkins.  She then caused a new alias summons to be issued on November 28, 2006.  Jenkins was served on January 10, 2007.

¶7.     Jenkins testified that he moved to Bradenton, Florida, in May 2002 to care for an ill friend. He claimed that the address which Oswald obtained from the USPS for the first alias summons was his friend's residence.  According to Jenkins, he resided at that address until May or June 2003, then returned to Mississippi.  In Mississippi, Jenkins lived with his brother for approximately one month before finding a home to lease.  The lease agreement which Jenkins presented to the court showed a Brandon, Mississippi, address, with the term

3

of lease commencing on July 1, 2003. Jenkins testified that he remained at that address for three years, before moving into a new house also located in Brandon.

¶8.     According to Jenkins, while in Mississippi he was employed by his brother's real estate business, and this was generally known among his friends. In support thereof, he entered into evidence an undated article from the Rankin County newspaper concerning modular homes, which contained a photo-caption identifying Jenkins and his brother. Jenkins claimed that the article ran in May 2004.

¶9.     Jenkins disputed the alleged 2006 meeting with Oswald, testifying that the encounter occurred on July 4, 2003. According to Jenkins, he informed Oswald that he had moved back to Mississippi and gave her a business card with his contact information at his brother's real estate company. Jenkins further testified that he used only a cell phone and did not have a listed phone number in his name.[2]

¶10.    At the conclusion of Jenkins's testimony, the chancellor interrogated him as to when his Mississippi driver's license was reinstated. Jenkins could not recall. When asked by the chancellor if he had maintained his Florida driver's license for more than thirty days following his return to Mississippi, Jenkins responded affirmatively.[3]

¶11.    In her ruling, the chancellor expressed concern as to the lack of documented court authorization permitting such a long delay between the filing of the original complaint and

[2]Jenkins's wife, who corroborated his testimony regarding the meat-market encounter, testified that the land-line phone at the home Jenkins leased was listed in her name.

[3]Mississippi Code Annotated Section 63-1-7(b) requires new residents with an out-of-state license to obtain a Mississippi driver's license within sixty days of establishing permanent residency. *See* Miss. Code Ann. § 63-1-7(b) (Rev. 2004).

4

service of process upon Jenkins.  She deemed the absence of application for an extension of

time to search for Jenkins to be problematic.[4]  However, the chancellor also found that:

> looking at a reasonable man's burden, there is effort upon the part of [Oswald] that she attempted throughout the numerous years to seek some idea of a good address upon [Jenkins].  It appears from the *testimony the Court finds credible* that [Oswald] sought to have service of process upon [Jenkins] in the area of Florida during the early part of this 2002 lawsuit.  It appears during the time period, *based upon her credible testimony*, that she googled and/or searched through some type of computerized searching to see about an address for [Jenkins].
>
> Based upon the testimony in rebuttal of [Jenkins], it appears that he did not have an address that would be easily ascertained through this googling and searching of the telephone books in the State of Mississippi and the tri-county area of Madison, Rankin and/or Hinds.  The *testimony* of [Oswald] that she made efforts through family and friends through the years of 2004, 2005 and 2006 before seeing a television ad o[n] WLBT . . . is *reasonable*.

(Emphasis added).  Based thereon, the chancellor determined that "[t]he testimony brought

forth today is credible, in that [Oswald] was making some diligence, or at least reasonably

diligent efforts. I would have preferred to have documentation in the Court file.  However

---

[4]Specifically, the chancellor stated:

> [m]y problem . . . is that there is nothing in the Court file authorizing this large amount of delay in the efforts of [Oswald] to seek and google and find these addresses and large times of delay notifying the Court and/or asking permission of the Court to allow the matter to remain open.  The Rules authorize this Court, upon application, to give large amounts of time for the seeking and/or googling and/or looking for persons.
>
> It does not reflect here in the Court file where anyone made any application to my predecessor asking for continued privilege to look for and/or continue this lawsuit against the one remaining defendant, that is Mr. William O. Jenkins, Buddy Jenkins.  That is a problem that is a paperwork problem.

it is not a fatal flaw." Ultimately, the chancellor denied Jenkins's motion to quash service of process and to dismiss the case.

## ISSUE

¶12.    This Court will consider:

Whether the chancellor abused her discretion in denying Jenkins's motion to dismiss.

## ANALYSIS

¶13.    According to this Court:

good cause is likely (but not always) to be found when the plaintiff's failure to complete service in timely fashion is a result of the conduct of a third person, typically the process server, the defendant has evaded service of the process or engaged in misleading conduct, the plaintiff has acted diligently in trying to effect service or there are understandable mitigating circumstances, *or* the plaintiff is proceeding pro se or in forma pauperis.

*Holmes v. Coast Transit Auth.*, 815 So. 2d 1183, 1186 (Miss. 2002) (quoting 4B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1137, at 342 (3d ed. 2000)) (emphasis added).  Furthermore:

[a] trial court's finding of fact on the existence of good cause for the delay in service of process has been deemed "a *discretionary ruling* . . . and entitled to *deferential review*" on appeal. *Rains v. Gardner*, 731 So. 2d 1192, 1197-98 (Miss. 1999).  When reviewing fact-based findings, we will only examine "whether the trial court *abused its discretion* and whether there was substantial evidence supporting the determination." *Id*. at 1197.

*Holmes*, 815 So. 2d at 1185 (emphasis added).

¶14.    In the case *sub judice*, Oswald issued process for Jenkins contemporaneously with the filing of her complaint on July 18, 2002. On August 3, 2002, Oswald's initial alias summons for Jenkins was filed.  Oswald's testimony from the hearing recounts her subsequent

laborious efforts to locate and serve process upon Jenkins.  During this period, Oswald testified that:

> [t]here was no point in giving an alias summons without a valid address, and I could never obtain a valid address.  There was nothing in the phone book.  There was nothing under his name.  I checked the Secretary of State site.  He was not connected with any valid business as a CEO that . . . I could find at that point in time.  I found nothing.

After seeing Jenkins on television "promoting a new company that had to do with modular housing in reaction to Katrina[,]" however, Oswald testified that she "immediately contacted the Secretary of State . . . ."  The second alias summons of November 28, 2006, was filed forthwith.

¶15.    In denying Jenkins's "MRCP 12(b) Motion to Quash Process and Dismiss," the chancellor provided a detailed explanation for her ruling.  That learned analysis reflects a clear comprehension of the applicable law and the appropriate exercise of discretion in deeming the evidence presented by Oswald to be credible and substantial.  *See* ¶ 11 *supra*.

¶16.    In deferentially reviewing the chancellor's ruling, this Court finds neither an absence of substantial evidence in support thereof or any other abuse of discretion.  While the dissent pays lip service to the principle that "weight and credibility assessments given to testimony as evidence are for the chancellor sitting as trier of fact[,]" *see* Dissenting Opinion at ¶ 30, its subsequent evidentiary analysis and contrary application of the principle lacks the

required deference.[5] Accordingly, this Court affirms the chancellor's discretionary denial of Jenkins's "Rule 12(b) Motion to Quash Process and Dismiss."

## CONCLUSION

¶17. Based upon the aforementioned analysis, this Court affirms the Chancery Court of Madison County's denial of Jenkins's "Rule 12(b) Motion to Quash Process and Dismiss" and remands this case for further proceedings consistent with this opinion.

¶18. **AFFIRMED AND REMANDED.**

**LAMAR, KITCHENS, AND PIERCE, JJ. CONCUR. GRAVES, P.J., CONCURS IN PART AND IN RESULT. PIERCE, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, LAMAR AND KITCHENS, JJ. CARLSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., DICKINSON AND CHANDLER, JJ.**

**PIERCE, JUSTICE, SPECIALLY CONCURRING:**

¶19. I concur with the majority's decision to affirm the chancellor's decision to deny Jenkins's Rule 12(b) Motion to Quash Process and Dismiss. I write separately, however, to explain my reasoning.

¶20. The length of time which this matter has remained opened since its filing is disconcerting. Indeed, the primary purpose behind our procedural rules is "to secure the just, speedy, and inexpensive determination of every action." *See* Miss. R. Civ. P. 1.

---

[5]For instance, even the dissent concedes that "a motion for extension of time is not required . . . ." *See* Dissenting Opinion at ¶ 33. *See also **Montgomery v. SmithKline Beecham Corp.**,* 910 So. 2d 541, 546 (Miss. 2005) (a plaintiff who files a motion for additional time for service of process before expiration of the service period is only "more likely [to] succeed in demonstrating diligence than a plaintiff who does nothing."); ***Webster v. Webster***, 834 So. 2d 26, 28-29 (Miss. 2002) ("if the drafters of our rules of civil procedure wished to require that motions for additional time in which to serve process be filed within the 120 days, they could have done so.").

¶21. Nonetheless, our procedural rules are to "be applied as liberally to civil actions as is judicially feasible." Miss. R. Civ. P. 1 cmt. This Court has determined that a party's failure to request an extension of time within 120 days of the filing of the suit does not require automatic dismissal. *See Webster v. Webster,* 834 So. 2d 26, 28-29 (Miss. 2002) (noting "if the drafters of our rules . . . wished to require that motions for additional time in which to serve process be filed within the 120 days, they could have done so"). Rather, if a party fails to serve process upon a defendant within 120 days after filing the complaint, and the party cannot show good cause why such service was not made with in that period, "the action shall be dismissed upon the court's own initiative with notice to such party or upon motion." Miss. R. Civ. P. 4(h).

¶22. The record does not disclose that any such notice was ever served upon Oswald, only that a Rule 12(b) motion was filed by Jenkins. Therefore, the matter remained open pending a hearing to determine whether or not Oswald could show good cause as to why process had not been served within the prescribed period of time. The chancellor, in her "wise and sound discretion," found that Oswald had demonstrated a good-cause reason for not effecting process. *See* Miss. R. Civ. P. 1 cmt.

¶23. It cannot be overstated that our trial courts are entitled to "deferential review" in matters that require a discretionary ruling. *Rains v. Gardner,* 731 So. 2d 1192, 1197-98 (Miss. 1999). It is clear from the record that the learned chancellor thoroughly considered this matter and then denied the Motion to Quash the Service of Process.

¶24. I therefore yield to that finding.

**RANDOLPH, LAMAR AND KITCHENS, JJ., JOIN THIS OPINION.**

9

**CARLSON, PRESIDING JUSTICE, DISSENTING:**

¶25.    Because the majority affirms the learned chancellor's denial of Jenkins's "Rule 12(b) Motion to Quash Process and Dismiss," I respectfully dissent.

¶26.    Jenkins asserts that the chancellor erred as a matter of law in denying his motion to dismiss Oswald's complaint for failing to comply with the 120-day deadline imposed by Mississippi Rule of Civil Procedure 4(h).  He asserts that the chancellor's finding of "good cause" and "diligence" is not supported by substantial evidence.  I agree with Jenkins.

¶27.    Denial of a motion to dismiss a complaint for failure to serve process within 120 days of its filing presents a question of law, which this Court reviews de novo.  ***Bacou-Dalloz Safety, Inc. v. Hall,*** 938 So. 2d 820, 822 (Miss. 2006) (citation omitted).  Without question, a trial court's factual determination as to whether good cause exists is a discretionary ruling, entitled to deferential review of whether the trial court abused its discretion and whether there was substantial evidence supporting the determination.  ***LeBlanc v. Allstate Ins. Co.,*** 809 So. 2d 674, 676 (Miss. 2002) (citing ***Raines v. Gardner,*** 731 So. 2d 1192, 1198 (Miss. 1999) (citations omitted)).  "The plaintiff bears the burden of establishing good cause." ***Holmes v. Coast Transit Authority,*** 815 So. 2d 1183, 1185 (Miss. 2002).

¶28.    Rule 4(h) of the Mississippi Rules of Civil Procedure states:

> If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.

Miss. R. Civ. P. 4(h).

10

¶29. There is no bright-line test for determining whether a plaintiff has met the burden of establishing "good cause" for failure to comply with the 120-day deadline. As a standard, though, "good cause" has been deemed by this Court to be a strict one. *Crumpton v. Hegwood,* 740 So. 2d 292, 294 (Miss. 1999) (citations omitted). Likewise, for purposes of Rule 4(h), the standard demands a showing of diligent effort on the part of plaintiffs. *Foss v. Williams,* 993 So. 2d 378, 379 (Miss. 2008) (citing *Montgomery v. SmithKline Beecham Corp.,* 910 So. 2d 541, 546 (Miss. 2005)).

¶30. The chancellor concluded that Oswald had established good cause by a showing of reasonable diligence in her attempts to locate and serve Jenkins, who was found not to have had an easily ascertainable address. Her ruling rested on a factual determination, based primarily on a credibility finding, established through the parties' respective testimony. Undoubtedly, weight and credibility assessments given to testimony as evidence are for the chancellor sitting as trier of fact. *Lorenz v. Strait,* 987 So. 2d 427, 430 (Miss. 2008) (citation omitted). However, while this Court on appeal should afford appropriate deference to a chancellor's discretionary fact-finding, such discretion, in my opinion, is not unfettered. Oswald's reason for failing to meet the 120-day time limit set forth by Rule 4(h) was her inability to locate and serve Jenkins with the alias summons issued in 2002, thereby alluding that Jenkins was evading service of process. Although this type of conduct on the part of a defendant may constitute a good-cause basis for a plaintiff's failure to meet the 120-day deadline, the burden rests with the plaintiff to demonstrate as much. *Holmes,* 815 So. 2d at 1185.

11

¶31. Apart from her testimony, the only additional evidence furnished by Oswald in support of her "good cause" was the 352-44a form from USPS exhibited to show Jenkins had changed his Madison mailing address to an address in Florida. Oswald claimed that she, or someone from the law office where she worked, hired a Florida process server to personally serve Jenkins at that address. Yet, without reasonable explanation, Oswald failed to produce any kind of documentation to corroborate that effort.

¶32. Further, notification by Jenkins to the post office that he was changing his address, without more, does not advance an inference to a fair conclusion that he was evading service of process; especially, when viewed under the scope of Rule 4. *See* Miss. R. Civ. P. 4. Personal service, under Rule 4(c)(1), was but one option Oswald had available to her under the rule. Upon obtaining proof-in-hand that Jenkins had taken residence in Florida, pursuant to Rule 4(c)(5), Oswald also could have attempted service by certified mail. An "unclaimed" envelope, properly marked "restricted delivery," produced alongside the 352-44a form, would have at least supported an inference that Jenkins was attempting to avoid process. The record simply does not support a conclusion that Jenkins was actively avoiding service of process.

¶33. I also find it troubling that at no time did Oswald file a motion for extension of time to serve process on Jenkins. "Such diligence would support an allegation that good cause exists for failure to serve process timely." **Webster v. Webster**, 834 So. 2d 26, 29 (Miss. 2002). Instead, Oswald chose simply to overlook or possibly ignore the guidance of the Mississippi Rules of Civil Procedure and this Court. As this Court has stated, "[E]xcusable neglect is a 'very strict standard' and the plaintiff *should have* filed a motion for additional

12

time within 120 days of filing the complaint." *Id.* (quoting *Moore v. Boyd*, 799 So. 2d 133 (Miss. Ct. App. 2001)). In my opinion, we should again reiterate to our trial bench and bar that, although a motion for extension of time is not required, it is definitely preferred.

¶34. Also, much is made in Oswald's brief regarding the fact that Jenkins failed to timely renew his driver's license upon returning to Mississippi. The record is inconclusive as to when Jenkins reobtained a Mississippi driver's license. Jenkins very well may have purposely delayed doing so in order to impede Oswald's efforts; or, although he admitted to not obtaining a Mississippi driver's license within thirty days, he may actually have met the sixty-day requirement set forth by Mississippi Code Annotated Section 63-1-7(b); or, he may simply have been derelict in failing to comply with this statute. Personally, I am left to nothing but speculation on this point, but in the end, to me it is of no moment. The due diligence contemplated by Rule 4(h) lies solely with the plaintiff. Moreover, as with the USPS 352-44a form, Oswald could have used the fact that Jenkins had a Florida driver's license to attempt service of process by the additional options provided to her under Rule 4.

¶35. I likewise see no reason to address all the events which occurred throughout the 1,638-day period between the filing of the complaint and the eventual service upon Jenkins, because, in my opinion, Oswald failed to show that she proceeded with reasonable diligence during the first 120 days. Thus, I conclude that Oswald failed in her burden to establish good cause for not serving process within the 120-day deadline set forth by Rule 4(h).

¶36. With this being said, I find that the chancellor erred as a matter of law in denying Jenkins's motion to dismiss. Because the majority finds otherwise, I dissent.

**WALLER, C.J., DICKINSON AND CHANDLER, JJ., JOIN THIS OPINION.**

13