# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-CA-00091-SCT

*SHANNON MONTGOMERY AND JOHN DAVID MONTGOMERY AS THE LAWFUL HEIRS OF DAVID E. MONTGOMERY, DECEASED*

*v.*

*SMITHKLINE BEECHAM CORPORATION f/k/a GLAXOWELLCOME, INC., d/b/a GLAXOSMITHKLINE; EDWARD GORE, M.D.; NORTH MISSISSIPPI MEDICAL CENTER; NORTH MISSISSIPPI FAMILY MEDICAL CLINIC, INC.,d/b/a CHICKASAW FAMILY MEDICAL CLINIC; AND WAL-MART STORES, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/05/2004 |
| TRIAL JUDGE: | HON. THOMAS J. GARDNER, III |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | JONATHAN THOMAS CRUMP |
| ATTORNEYS FOR APPELLEES: | JOSIAH DENNIS COLEMAN |
| | ROBERT K. UPCHURCH |
| | DAVID W. UPCHURCH |
| | JOHN G. WHEELER |
| | DONNA M. BARNES |
| | R. BRITTAIN VIRDEN |
| | CHARLES S. HEWINS |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | AFFIRMED - 02/24/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1.    According to plaintiffs Shannon and John David Montgomery, David E. Montgomery died on November 17, 1999, as a result of taking Allopurinol, a drug manufactured by

SmithKline Beecham Corp.[1] The prescription was written by Dr. Edward Gore, plaintiffs further allege that while acting as the agent of North Mississippi Medical Center and North Mississippi Family Medical Clinics, Inc. d/b/a Chickasaw Family Medical Clinic)  and was filled by the pharmacy at Wal Mart Store #10-0411 in Houston, Mississippi.

¶2.     Suit was filed November 16, 2001, but plaintiffs did not immediately attempt to have process served on the defendants.   Instead, on February 20, 2002, plaintiffs filed a motion, representing to the court that additional time was needed for service of process.   The basis of the motion was that the law firm, Greer, Pipkin and Russell, had been recently associated, and "[a]fter several attempts, Plaintiffs' newly associated counsel [had] been unable to properly confer with plaintiffs Shannon Montgomery and John David Montgomery."   Also, plaintiffs' counsel represented that "additional time [would] allow plaintiffs to file an amended complaint that [would] simplify the issues."   An order granting "an additional 120 days from the date of entry of [the] order" was signed on February 12, 2002 (eight days before the motion was filed); but for reasons we are not told, the order was not entered of record until April 23, 2002.[2]

¶3.     On July 22, 2002, neither counsel for plaintiffs had  served process on the defendants. The plaintiffs' attorneys signed an agreed ordered allowing Greer, Pipkin and Russell to withdraw from the action, and plaintiffs filed another motion for additional time (60 days) for service of process, stating as their "good cause" the fact that Greer, Pipkin and Russell had not caused process to be served, and "Shelton & Associates have had no time to effect service of

---

[1]Formerly known as GlaxoWellcome, Inc., d/b/a GlaxoSmithKline.

[2]Assuming arguendo plaintiffs' reason for the extension constituted "good cause" (discussed infra), the court's order extended the time for service of process until August 21, 2002.

process on the defendants." The motion also requested that the court "relate back" the additional time to the February 12, 2002, order. An order was entered on July 22, 2002, granting the requested extension and ordering that the order "shall relate back to the court's order of February 12, 2002." Assuming arguendo the plaintiffs' reasons for the extension constituted "good cause" (discussed infra), the court's July 22, 2002 order extended the time for service of process for sixty days from July 31, 2002 (the date of entry of the order). However, as of September 29, 2002, (sixty days later), process had not been served, and no further extension had been requested, as of that date.

¶4.	On December 3, 2002, 65 days after the expiration of the extension granted by the July 31, 2002 order, counsel for plaintiffs filed their third motion for additional time to serve process, stating that the attorney of record, Paul Goodman, was shot and killed, and his "sudden and unexpected death left the status of this file in question." The motion further averred that "it could not be determined if Mr. Goodman had time before his death to attempt service upon Defendants. . . ." Plaintiffs' new counsel, Jon T. Crump,[3] urged that these circumstances warranted a finding of excusable neglect. He requested an additional 30 days to serve process and further requested that the court have the extension "relate back" to the July 22, 2002 order. An ordered was signed and entered on December 3, 2002, "granting an additional 30 days from the entry of [the] order to effectuate service of process on the defendants. . . ." The order further purported to "relate back" to the court's prior order of July 22, 2002.

---

[3]Jon T. Crump later signed an amended complaint (discussed infra) which listed his firm name as "Jimmy D. Shelton & Associates, P.A. He also listed the same address and phone number as plaintiffs' counsel who signed the original complaint, and all interim motions.

¶5.    Plaintiffs' counsel filed, on December 9, 2002, an amended complaint which: (a) named the same defendants as the original complaint; (2) alleged the same counts and claims as the original complaint; and (3) had 64 numbered paragraphs, whereas the original complaint had 63.  On the same day the amended complaint was filed, process was served on Dr. Gore and Chickasaw Family Medical Clinic As of December 30, 2002, all defendants had been served with process.

¶6.    On January 8, 2003, Dr. Gore, North Mississippi Medical Center, Inc., and North Mississippi Medical Clinics, Inc. d/b/a Chickasaw Family Medical Clinic filed a Motion to Dismiss based upon insufficiency of process and insufficiency of service of process with 120 days after the filing of the Complaint, expiration of the statute of limitations, and failure to state a claim upon which relief can be granted.

¶7.    On January 14, 2003, SmithKline Beecham f/k/a GlaxoWellcome, Inc., d/b/a GlaxoSmithKline filed its motion to dismiss on similar grounds, as did Walmart Stores, Inc. on January 22, 2003.

¶8.    On July 2, 2003, a hearing was conducted on the motions to dismiss, and a Final Judgment granting the Defendants' motions to dismiss and dismissing the case with prejudice as to all defendants was signed by the trial judge on January 5, 2004, and entered of record on January 7, 2004.  The plaintiffs now appeal from that judgment.

## STANDARD OF REVIEW

¶9.    This Court has held:

> A trial court's finding of fact on the existence of good cause for the delay in service of process has been deemed 'a discretionary ruling . . . and entitled to deferential review' on appeal.  ***Rains v. Gardner***, 731 So. 2d 1192, 1197-98

4

(Miss. 1999). When reviewing fact-based findings, we will only examine 'whether the trial court abused its discretion and whether there was substantial evidence supporting the determination.' *Id.* at 1197. However, a decision to grant or deny an extension of time based upon a question of law will be reviewed de novo. *Id.* at 1198.

*Holmes v. Coast Transit Auth.*, 815 So. 2d 1183, 1185 (Miss. 2002) (citation omitted).

## ANALYSIS

¶10.    Plaintiffs raise two issues:  (1) Whether they demonstrated good cause for failing to serve process within 120 days of filing the complaint, and (2) whether the trial court is bound by its own order granting an extension of time to serve process.  Our resolution of the first issue renders resolution of the second unnecessary.

¶11.    Rule 4(h) of the Mississippi Rules of Civil Procedure states:

> If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.

¶12.    The strict language of Rule 4(h) suggests that "good cause" can only be shown after the expiration of the 120-day period – and then, only to demonstrate "why such service was not made ***within that period***, . . . ." (Emphasis added).  The Mississippi Rules of Civil Procedure do not provide for prospective good cause, that is, good cause which extends into the future, and there is no provision for extending the time for service of process.

¶13.    Indeed, this Court has stated that, although there is no requirement of a motion for additional time, "the better method to be utilized in future cases would be for plaintiff's counsel to seek authority for extensions from the court, rather than unilaterally making this

5

decision himself." ***Fortenberry v. Mem'l. Hosp.***, 676 So. 2d 252, 256 (Miss. 1996). Ordinarily under Rule 4(h), where the 120 days has expired, a court must notify the plaintiff that, because of the failure to serve process, the case is subject to dismissal. The plaintiff must then appear and attempt to show good cause why process was not served within the 120-day period for service.[4] "Good cause" can never be demonstrated where plaintiff has not been diligent in attempting to serve process. ***Bang v. Pittman***, 749 So. 2d 47, 52 (Miss. 1999). In demonstrating good cause and diligence, a plaintiff must show that he or she has been unable to serve process because the defendant evaded process or engaged in misleading conduct, or for some other acceptable reason, as discussed in ***Holmes***, 815 So. 2d at 1186.

¶14. Notwithstanding the absence of any specific rule allowing or requiring a motion for additional time for service of process, this Court has held that, if it appears process cannot be served within the 120-day period, "a diligent plaintiff should file [a motion for additional time to serve process] within the 120-day time period. Such diligence would support an allegation that good cause exists for failure to serve process timely." ***Webster v. Webster***, 835 So. 2d 26, 29 (Miss. 2002). In ***Webster*** this Court went on to say:

> Rule 4(h) does not require that a motion for additional time for service of process be filed within 120 days of the filing of the complaint. Arkansas and New York's rules of civil procedure mandate that a motion for additional time be filed within the 120-day period. *See, e.g.,* ***Weymouth v. Chism***, 75 Ark.App. 164, 55 S.W.3d 307 (2001); ***Norstar Bank of Upstate New York v. Wittbrodt***, 154 Misc. 2d 260, 594 N.Y.S.2d 115 (N.Y.Sup.Ct. 1993). Arkansas's counterpart to Rule 4(h) specifically provides, 'If a motion to extend is made within 120 days of the filing of the suit, the time of service may be extended by the court upon a showing of good cause.' Ark.R.Civ.P. 4(i). New York's rule is

---

[4]Although the rule specifically addresses only the 120-day period, the diligence and good cause requirements extend until the time process is served.

6

similar. Therefore, if the drafters of our rules of civil procedure wished to require that motions for additional time in which to serve process be filed within the 120 days, they could have done so.

*Webster*, 834 So. 2d at 28-29.

¶15. This Court's holding in *Webster* did not expand the rules and create a new right to seek an additional period of time for service of process; but rather provided a practical and logical suggestion for one factor a court could consider when trying to determine whether a plaintiff has been diligent. Stated another way, a plaintiff who – prior to expiration of the service period – files a motion representing that he or she has been unable to serve process, will more likely succeed in demonstrating diligence than a plaintiff who does nothing. Either way, however, the plaintiff must demonstrate diligence.

¶16. Plaintiffs cite the permissive language in *Webster* for the proposition that a motion for additional time to effect service of process may be filed after the 120 day period has run. They then state:

> The Court has also held, in 2003, that the motion for additional time must be filed before the expiration of the 120 day time period. *Mitchell v. Brown*, 835 So. 2d 110, 112; 2003WL 139598 (Miss. App. 2003). However, the *Mitchell* decision was based upon a case decided in 2001, *Moore v. Boyd*, 799 So. 2d 133 [(Miss. App. 2001)] *Id.* at 112.

¶17. Plaintiffs' first motion for additional time was filed within the 120-day period, the second motion was filed within the 120-day extended period, and the third motion was filed after expiration of the second extension. They point out, however, that each order granting the extension of time "related back" to the previous extension thereby bridging the lapses. Furthermore, they argue that *Webster* is controlling; and therefore, the motions could be filed after the running of the 120-day period.

7

¶18.    Plaintiffs place far too much emphasis on when a motion should be filed, while ignoring any demonstration of diligence.  They do, however, discuss "good cause," telling us:

> The first motion offered as good cause the association of a second law firm. This firm wished to ensure itself that the proper parties were being sued before serving process as to avoid suing an innocent party.   The desire to avoid unnecessary litigation is certainly good cause.   The second motion was based upon the fact that the law firm of Greer, Pipkin and Russell had withdrawn but not returned the file.  The firm who took the file back had no reason to know that service had not been made prior to Greer, Pipkin and Russell's withdrawal.  This exchange at least constituted excusable neglect.  Such has been held enough to constitute good cause.  The final motion for additional time was based upon the death of the attorney handling the case.  The delays accompanying such an event are unavoidable.  It takes time for another attorney to be assigned the case.  And once the case [i]s reassigned the other attorney will need time to familiarize himself with the case.  This too is good cause to extend a deadline.

¶19.    These same arguments were presented to the trial judge with respect to defendants' motions for dismissal, to which the court responded in a well-written judgment and considered opinion. We include the trial judge's opinion, in its entirety, as Appendix "A" hereto.

¶20.    Although we find the trial court's reasoning to be compelling, we must point out other problems with all three of plaintiffs' motions.

*The first motion for additional time.*

¶21.    First, we notice that the justification offered to the trial court by plaintiffs' counsel for the first extension of time, does not exactly match the justification offered to this Court. When speaking to this Court, plaintiffs' counsel

> offered as good cause the association of a second law firm.   This firm ***wished to ensure itself that the proper parties were being sued*** before serving process [so] as to avoid suing an innocent party.   The desire to avoid unnecessary litigation is certainly good cause.

(Emphasis added). Upon review of the motion, we find the following representation to the trial court as the claimed basis for the request for additional time:

> Counsel for plaintiffs were recently associated on this matter by the law firm of Jimmy D. Shelton & Associates. The 120 day period for service of process provided in Rule 4 of the Mississippi Rules of Civil Procedure will lapse prior to present counsel having an opportunity to properly review the immediate lawsuit. After several attempts, Plaintiffs' newly associated counsel has been unable to properly confer with plaintiffs Shannon Montgomery and John David Montgomery. Counsel is of good faith belief that additional time will allow plaintiffs to file an Amended Complaint that will simplify the issues to be presented to the Court, thereby promoting judicial economy.

¶22.    As we read it, the motion says nothing about the new firm's "need to ensure itself that the proper parties were being sued before serving process as to avoid suing an innocent party." The motion indicates counsel made several unsuccessful attempts to confer with the clients. We are also told that counsel anticipated an amended complaint to "simplify the issues." Thus, regarding the need for the first extension of time, the representations made to this Court do not match the representations made to the trial court.

¶23.    Furthermore, we are not told when Greer, Pipkin and Russell was associated on the case by Jimmy D. Shelton & Associates. Assuming it was close to the end of the 120-day period for service of process,[5] we are unable to locate any evidence whatsoever that plaintiffs' counsel diligently attempted to serve process during the months prior to associating this firm. To the contrary, it appears counsel did not make any attempt – diligent or otherwise – to serve process. Plaintiffs had the burden of demonstrating "good cause why such service was not

---

[5]On February 20, 2002, Greer, Pipkin and Russell represented to the trial court that they had been "recently associated."

9

made within that [120-day] period." Instead, plaintiffs attempted to demonstrate why the newly associated firm required an additional 120-days for service of process.

¶24. The burden is upon the plaintiffs to demonstrate good cause for failure to timely serve process. *Holmes*, 815 So. 2d at 1184. More is required than "simple inadvertence, mistake of counsel, or ignorance of rules. . . ." *Watters v. Stripling*, 675 So. 2d 1242, 1243 (Miss 1996). The standard is strict, and requires diligence. *Bang v. Pittman*, 749 So. 2d 47, 52 (Miss. 1999); *Moore v. Boyd*, 799 So. 2d 133, 136 (Miss. Ct. App. 2001) ( citing *Black v. Carey Canada, Inc*., 791 F. Supp. 1120, 1126 (S.D. Miss. 1990));. In all of these respects, plaintiffs are woefully deficient. In short, with respect to the first motion for time, plaintiffs completely failed to demonstrate "good cause" as required by Rule 4(h).

*The second motion for additional time.*

¶25. Plaintiffs tell us that "[t]he second motion was based upon the fact that the law firm of Greer, Pipkin and Russell had withdrawn but not returned the file. The firm who took the file back had no reason to know that service had not been made prior to Greer, Pipkin and Russell's withdrawal." Again, we find the representations of counsel to be less than forthright.

¶26. Plaintiffs' counsel leaves the implication, once Greer, Pipkin and Russell was associated on the case, Jimmy D. Shelton & Associates no longer had responsibilities to represent the plaintiffs, including the responsibility to make sure process was timely served. Counsel implies that his firm "took the file back" and "had no reason to know that service had not been made prior to Greer, Pipkin and Russell's withdrawal." The fact is, Jimmy D. Shelton & Associates never lost possession of the file – at least, not in the legal sense. And for counsel to represent to this Court that his firm "had no reason to know that service had not

10

been made prior to Greer, Pipkin and Russell's withdrawal" is unsupportable. Jimmy D. Shelton & Associates has been counsel of record in this matter since its inception, and as counsel of record, maintained all the duties and obligations to the client as provided in Rules 1.1, 1.2, 1.3 and 1.4 of the Mississippi Rules of Professional Conduct.

*The third motion for additional time.*

¶27. Finally, counsel tell us that a third motion for additional time to serve process was necessary because of the untimely death of attorney Paul Goodman, which occurred "a matter of weeks subsequent to" the trial court's third order granting additional time to serve process. As with the previous motions, we are given no evidence or indication that plaintiffs used reasonable diligence to serve process prior to Goodman's death. We further note that attorney Jimmy D. Shelton signed the complaint filed on November 16, 2001, and we are provided no explanation why Shelton did not cause process to be served.

¶28. Accordingly, we agree with the trial court and find plaintiffs have failed to demonstrate good cause why process was not timely served, and as a result the dismissal of this civil action must be affirmed.

**CONCLUSION**

¶29. Plaintiffs have failed to demonstrate good cause for their failure to timely serve process. Consequently, the statute of limitations has run as to all defendants. The Final Judgment entered by the trial court is affirmed.

¶30. **AFFIRMED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., CARLSON AND RANDOLPH, JJ., CONCUR. GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**

**EASLEY, J., DISSENTS WITH SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**

**EASLEY, JUSTICE, DISSENTING:**

¶31. I respectfully dissent to the majority's opinion today finding that the Plaintiffs failed to demonstrate good cause why process had not been timely served on the Defendants and affirming the trial court's ruling and dismissal of the case with prejudice as to all Defendants. Counsel for the Plaintiffs demonstrated valid and good cause for an extension of time to serve process because of the sudden murder of the attorney of record in the case, Paul Goodman. In addition, the circuit court judge granted a third extension to the Plaintiffs and service of process was complete as to all Defendants prior to the expiration of the court ordered extension period. Therefore, I disagree with this Court's affirmance of the trial court's order subsequently granting the Defendants' motion to dismiss with prejudice.

¶32. The record shows that the Plaintiffs filed suit on November 16, 2001. Prior to the expiration of the 120 day service of process period, a motion for extension of time was granted by the trial court. New counsel was associated on the case, and counsel had problems conferring with the Plaintiffs.

¶33. Thereafter, a second motion for extension of time was granted which related back the time to the first order. The new counsel for Plaintiffs had withdrawn from representation.

¶34. Finally, a third motion for extension of time was granted by the trial court. This order, like the other orders all related back to the first extension order. Every defendant was served with process within the extension period. The main reason for the extension was the death of the attorney handling the case.

12

¶35.    After service of process was complete, the Defendants then filed a motion to dismiss the case.  More than one year after the trial court granted the third extension and service of process was complete, the trial court granted the Defendants' motion to dismiss.

¶36.    The death of an attorney handling a case is a valid reason for an extension. The subsequent need to review the dead attorney's caseload, establish a new attorney to handle the case and allow time to review the file is a valid reason and good cause for any delay.  At a minimum, these reasons clearly demonstrate excusable neglect.

¶37.    Second, the majority's affirmance of the trial court's grant of the Defendants' motion to dismiss ignores the fact that the trial court granted a third extension for time.  The trial court entered a valid order and the plaintiffs complied with that order by serving process on all defendants.  Only after service of process was complete did  the Defendants file a motion to dismiss with prejudice.  A fundamental problem exists when numerous trial court orders are entered permitting extensions of time to serve process and then when service of process is complete within the extension, the trial court effectively overrules its prior orders allowing the extensions for service of process.

¶38.    Incidentally, the majority makes much of the fact that the justification for the first extension was different when argued to the trial court as opposed to this Court on appeal.  In specific, the majority cites to the Plaintiffs' reasoning, in part, argued to the trial court that counsel needed "an opportunity to properly view the immediate lawsuit."  The reasoning to this Court for the first extension was that the firm "wished to ensure itself that the proper parties were being sued before service of process [so] as to avoid suing an innocent party."

13

Maj. Op. ¶ 22. The majority states that the representations to the trial court and this Court do not match. However, part of a "proper review" process of a file would indicate if there was a potential problem with whether the correct parties were being sued. Therefore, I do not see a conflict with the justification as stated to the trial court and this Court on appeal.

¶39. For these reasons, I respectfully dissent to the majority's ruling today. I would reverse the circuit court's judgment and remand this case for further proceedings.

IN THE CIRCUIT COURT OF LEE COUNTY, MISSISSIPPI

SHANNON MONTGOMERY AND JOHN
DAVID MONTGOMERY, AS THE LAWFUL
HEIRS OF DAVID E. MONTGOMERY, DECEASED                    PLAINTIFFS

V.                                              CAUSE NO. CV01-301(G)L

GLAXOSMITHKLINE CORPORATION, FORMERLY
D/B/A GLAXOWELLCOME CORPORATION AND
SMITH KLINE, A DIVISION OF GLAXOWELLCOME
CORPORATION, EDWARD GORE, M.D.,
NORTH MISSISSIPPI MEDICAL CENTER,
NORTH MISSISSIPPI FAMILY MEDICAL
CLINIC, INC., CHICKASAW FAMILY
MEDICAL CLINIC, WAL-MART STORES, INC.                    DEFENDANTS

## FINAL JUDGMENT

**THIS CAUSE** came on for hearing on the motions to dismiss of the defendants, and the Court, having considered the motions, the plaintiffs' responses thereto, and the arguments of counsel at a July 2, 2003, hearing, rules as follows:

### PROCEDURAL HISTORY

1. The plaintiffs filed their original Complaint in this case on November 16, 2001, against SmithKline Beecham Corporation, f/k/a Glaxo Wellcome, Inc., d/b/a GlaxoSmithKline Corporation ("GSK"); Edward Gore, M.D. ("Gore"); North Mississippi Medical Center, Inc. ("NMMC"); North Mississippi Medical Clinics, Inc., d/b/a Chickasaw Family Medical Clinic ("Clinic"); and Wal-Mart Stores, Inc. ("Wal-Mart"). In the Complaint, the plaintiffs, as the lawful heirs of David E. Montgomery, deceased, alleged that Mr. Montgomery was injured and expired secondary to the ingestion of Allopurinol.

639457

243/280  147

# Appendix A

2. On February 20, 2002, the plaintiffs filed a motion requesting an additional 120 days to effectuate service of process on the defendants. No notice of the motion was given to the defendants or their representatives. On April 23, 2002, an order was entered by this Court allowing the plaintiffs the requested 120 day extension. The order was entered by the Court based solely upon the representations of counsel for the plaintiffs as to good cause for an extension of time to effectuate service of process. No evidence of good cause was presented, and the Court made no express determination on this issue.

3. On July 22, 2002, the plaintiffs again moved for additional time (60 days) to serve process on the defendants, and on July 31, 2002, an order was entered by this Court allowing the plaintiffs until September 29, 2002, to effectuate service. Again, the order was entered by the Court based solely upon the representations of counsel for the plaintiffs as to good cause for the extension. No evidence of good cause was presented, and the Court made no express determination on this issue.

4. No defendant was served with process by the deadline of September 29, 2002. Sixty-five (65) days after the expiration of the deadline, the plaintiffs filed a third motion seeking additional time (30 days) to serve process. An order

was entered by this Court allowing the plaintiffs until January 2, 2003, to effectuate service. The order was entered based solely upon the representations of counsel for the plaintiffs as to good cause for the extension. No evidence of good cause was presented, and the Court made no express determination on this issue.

5. On December 9, 2002, the plaintiffs filed their Amended Complaint, which is substantively verbatim to the original Complaint, with the exception of the title of the document. Wal-Mart was served with process (Amended Complaint) on December 9, 2002. Gore, NMMC, and Clinic were served with process (Amended Complaint) on December 12, 2002. GSK was served with process (Amended Complaint) on December 15, 2002. No defendant was served with the original Complaint in this case.

**OPINION**

6. Rule 4(h) of the Mississippi Rules of Civil Procedure provides as follows:

> **(h) Summons: Time Limit for Service.** If a service of the summons and Complaint is not made upon a defendant within 120 days after the filing of the Complaint and the party on whose behalf such service is required cannot show good cause why such service *was* not made within that period, the action *shall be dismissed as to that defendant* without prejudice upon the court's own initiative with notice to such party or upon motion. [emphasis supplied].

MISS. R. CIV. P. 4(h).

*Coast Transit Authority*, 815 So.2d 1183, 1184 (Miss. 2002). To satisfy this burden, a plaintiff must demonstrate "at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice." *Watters v. Stripling*, 675 So.2d 1242, 1243 (Miss. 1996). To establish good cause for failure to timely serve process, a plaintiff must have been diligent in his or her efforts to effectuate service on the defendants within 120 days. *Rang v. Pittman*, 749 So.2d 47, 52 (Miss. 1999).

11. Through their response to the pending motions to dismiss and during the July 2, 2003, hearing on the motions, the plaintiffs offered the Court no evidence upon which to base a finding of good cause for their failure to timely serve the defendants with process in this case. There is no evidence that a third person contributed to the delay in service or that there was effort on behalf of any defendant to evade service. The record before the Court clearly demonstrates that each defendant could have been located and served with process within 120 days of the filing of the plaintiffs' original Complaint. Further, and more importantly, the plaintiffs and their attorneys have failed to demonstrate any degree of diligence in their efforts to serve the defendants with process timely.

12. As noted above, this Court's orders allowing the plaintiffs additional time to serve process were solely based upon the bare representations of good cause by counsel for the plaintiffs. No notice of the extensions was given to the defendants, and the orders of the Court certainly did not preclude the defendants from challenging the issue of whether good cause, in fact, existed for the extensions once process was served. *Webster v. Webster*, 834 So.2d 26 (Miss. 2003).

13. The plaintiffs' alleged causes of action against Wal-Mart and GSK are subject to Mississippi's general three (3) year statute of limitations codified at MISS. CODE ANN. §15-1-49 (1972, as amended). The plaintiffs' medical negligence claim against Gore, NMMC, and Clinic are governed by the two (2) year statute of limitations codified at MISS. CODE ANN. §15-1-36 (1972, as amended). The limitations periods commenced for the plaintiffs' claims against the defendants, at the latest, on November 17, 1999, the date David E. Montgomery, deceased, expired. The filing of the original Complaint on November 16, 2001, tolled the applicable statutes of limitations periods for only 120 days. *Holmes v. Coast Transit Authority*, 815 So.2d 1183, 1185 (Miss. 2002); *Watters v. Stripling*, 675 So.2d 1242, 1244 (Miss. 1996). Thus, the applicable limitations periods began to run again on March 16, 2002, and expired for the claims

against Gore, NMMC, and Clinic on March 17, 2002, and for the claims against GSX and Wal-Mart on March 17, 2003.

14. Even when a plaintiff will be caused to lose a right of action because of the running of the statute of limitations, the 120 day limitation period established by Rule 4(h) must be observed by the courts. *Watters v. Stripling*, 675 So.2d 1242, 1244 (Miss. 1996) ("The fact that dismissal may work to preclude this action because of the running of the statute of limitations is of no consequence.") *Id.*

15. The Court notes that any effort to re-file this case by the plaintiffs against the defendants would be barred by the applicable statutes of limitations.

16. This case is hereby dismissed with prejudice with a final judgment, per Rule 54 of the Mississippi Rules of Civil Procedure, entered in favor of each defendant.

SO ORDERED, this, the 5 day of _____ , 2004.

/S/ Thomas J. Gardner III
CIRCUIT COURT JUDGE

FILED
TIME_____ AM / PM

JAN 0 7 2004

JOYCE LOFTIN
LEE CO. CIRCUIT CLERK
D.C.

613657

7
243/286  153