RANDOLPH, Justice,
for the Court.
¶ 1. This interlocutory appeal arises from the order of the Chancery Court of Madison County, Mississippi, which denied William O’Brien Jenkins, Jr.’s motion to dismiss for failure to comply with the 120-day serviee-of-process provision of Mississippi Rule of Civil Procedure 4(h). For the reasons discussed herein, this Court affirms.
FACTS AND PROCEEDINGS
¶ 2. On July 18, 2002, Margaret B. Oswald filed a complaint for preliminary in-junctive and other relief in the chancery court against Jenkins, among others.[1] On August 3, 2002, Oswald caused an alias summons to be issued for service upon Jenkins at a Florida address. No return of service of process was filed as to this alias summons, and no motion to extend the time for serving process was filed. On November 28, 2006, a second alias summons was issued for service upon Jenkins. On January 10, 2007, this alias summons was served on Jenkins in Rankin County.
¶ 3. Thereafter, Jenkins moved under Mississippi Rule of Civil Procedure 12(b) to quash process and dismiss the complaint. Jenkins’s motion relied upon Mississippi Rule of Civil Procedure 4(h), which requires that process be served within 120 days of the filing of the complaint, absent good cause. The chancery court subsequently conducted a hearing on the motion, which included testimony from both parties.
¶ 4. Oswald testified that, after filing her complaint in July 2002, she unsuccessfully attempted to serve a copy of the complaint, together with the original summons, at Jenkins’s Madison County address. Thereafter, Oswald filed an official inquiry with the United States Postal Service *748 (“USPS”) and received notice that Jenkins had obtained a new mailing address in Bradenton, Florida. On August 3, 2002, Oswald caused an alias summons to be issued for service upon Jenkins at the Florida address. According to Oswald, who was employed as a legal assistant by her attorney in this matter, the law office paid a process server in Florida to serve Jenkins at that address, but the process server was unable to locate him. Oswald produced no invoice or other documentation to corroborate this effort.
¶ 5. Between 2003 and 2005, Oswald conducted monthly internet searches via “Google” in an attempt to locate another address for Jenkins. These searches proved unsuccessful. According to Oswald, she periodically received reports from Jenkins’s friends who had seen him locally. With the assistance of others, Oswald attempted to discover if Jenkins had re-obtained a Mississippi driver’s license with a new address. Each such check revealed that Jenkins had only a Florida driver’s license.
¶ 6. In 2006, Oswald testified that she ran into Jenkins while purchasing barbecue in Rankin County. According to Oswald, she confronted Jenkins and told him that they needed to resolve the issues surrounding the subject litigation, and they exchanged cell phone numbers. Oswald claimed that the number she received from Jenkins was inactive. Shortly thereafter, Oswald saw Jenkins on a local television commercial promoting a new modular home company. Oswald immediately contacted the Mississippi Secretary of State’s Office and obtained a business address for Jenkins. She then caused a new alias summons to be issued on November 28, 2006. Jenkins was served on January 10, 2007.
¶ 7. Jenkins testified that he moved to Bradenton, Florida, in May 2002 to care for an ill friend. He claimed that the address which Oswald obtained from the USPS for the first alias summons was his friend’s residence. According to Jenkins, he resided at that address until May or June 2003, then returned to Mississippi. In Mississippi, Jenkins lived with his brother for approximately one month before finding a home to lease. The lease agreement which Jenkins presented to the court showed a Brandon, Mississippi, address, with the term of lease commencing on July 1, 2003. Jenkins testified that he remained at that address for three years, before moving into a new house also located in Brandon.
¶ 8. According to Jenkins, while in Mississippi he was employed by his brother’s real estate business, and this was generally known among his friends. In support thereof, he entered into evidence an undated article from the Rankin County newspaper concerning modular homes, which contained a photo-caption identifying Jenkins and his brother. Jenkins claimed that the article ran in May 2004.
¶ 9. Jenkins disputed the alleged 2006 meeting with Oswald, testifying that the encounter occurred on July 4, 2003. According to Jenkins, he informed Oswald that he had moved back to Mississippi and gave her a business card with his contact information at his brother’s real estate company. Jenkins further testified that he used only a cell phone and did not have a listed phone number in his name.[2]
¶ 10. At the conclusion of Jenkins’s testimony, the chancellor interrogated him as to when his Mississippi driver’s license was reinstated. Jenkins could not recall. When asked by the chancellor if he had *749 maintained his Florida driver’s license for more than thirty days following his return to Mississippi, Jenkins responded affirmatively.[3]
¶ 11. In her ruling, the chancellor expressed concern as to the lack of documented court authorization permitting such a long delay between the filing of the original complaint and service of process upon Jenkins. She deemed the absence of application for an extension of time to search for Jenkins to be problematic.[4] However, the chancellor also found that:
looking at a reasonable man’s burden, there is effort upon the part of [Oswald] that she attempted throughout the numerous years to seek some idea of a good address upon [Jenkins]. It appears from the testimony the Court finds credible that [Oswald] sought to have service of process upon [Jenkins] in the area of Florida during the early part of this 2002 lawsuit. It appears during the time period, based upon her credible testimony, that she googled and/or searched through some type of computerized searching to see about an address for [Jenkins].
Based upon the testimony in rebuttal of [Jenkins], it appears that he did not have an address that would be easily ascertained through this googling and searching of the telephone books in the State of Mississippi and the tri-county area of Madison, Rankin and/or Hinds. The testimony of [Oswald] that she made efforts through family and friends through the years of 2004, 2005 and 2006 before seeing a television ad o[n] WLBT ... is reasonable. *750 ble mitigating circumstances, or the plaintiff is proceeding pro se or in forma pauperis.
*749 (Emphasis added). Based thereon, the chancellor determined that “[t]he testimony brought forth today is credible, in that [Oswald] was making some diligence, or at least reasonably diligent efforts. I would have preferred to have documentation in the Court file. However it is not a fatal flaw.” Ultimately, the chancellor denied Jenkins’s motion to quash service of process and to dismiss the case.
ISSUE
¶ 12. This Court will consider:
Whether the chancellor abused her discretion in denying Jenkins’s motion to dismiss.
ANALYSIS
¶ 13. According to this Court: good cause is likely (but not always) to be found when the plaintiffs failure to complete service in timely fashion is a result of the conduct of a third person, typically the process server, the defendant has evaded service of the process or engaged in misleading conduct, the plaintiff has acted diligently in trying to effect service or there are understanda-
*750 Holmes v. Coast Transit Auth., 815 So.2d 1183, 1186 (Miss.2002) (quoting 4B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1137, at 342 (3d ed.2000)) (emphasis added). Furthermore:
[a] trial court’s finding of fact on the existence of good cause for the delay in service of process has been deemed “a discretionary ruling ... and entitled to deferential review ” on appeal. Rains v. Gardner, 731 So.2d 1192, 1197-98 (Miss. 1999). When reviewing fact-based findings, we will only examine “whether the trial court abused its discretion and whether there was substantial evidence supporting the determination.” Id. at 1197.
Holmes, 815' So.2d at 1185 (emphasis added).
¶ 14. In the case sub judice, Oswald issued process for Jenkins contemporaneously with the filing of her complaint on July 18, 2002. On August 3, 2002, Oswald’s initial alias summons for Jenkins was filed. Oswald’s testimony from the hearing recounts her subsequent laborious efforts to locate and serve process upon Jenkins. During this period, Oswald testified that:
[t]here was no point in giving an alias summons without a valid address, and I could never obtain a valid address. There was nothing in the phone book. There was nothing under his name. I checked the Secretary of State site. He was not connected with any valid business as a CEO that ... I could find at that point in time. I found nothing.
After seeing Jenkins on television “promoting a new company that had to do with modular housing in reaction to Katrina[,]” however, Oswald testified that she “immediately contacted the Secretary of State.... ” The second alias summons of November 28, 2006, was filed forthwith.
¶ 15. In denying Jenkins’s “MRCP 12(b) Motion to Quash Process and Dismiss,” the chancellor provided a detailed explanation for her ruling. That learned analysis reflects a clear comprehension of the applicable law and the appropriate exercise of discretion in deeming the evidence presented by Oswald to be credible and substantial. See ¶ 11 swpra.
¶ 16. In deferentially reviewing the chancellor’s ruling, this Court finds neither an absence of substantial evidence in support thereof or any other abuse of discretion. While the dissent pays lip service to the principle that “weight and credibility assessments given to testimony as evidence are for the chancellor sitting as trier of fact[,]” see Dissenting Opinion at ¶ 30, its subsequent evidentiary analysis and contrary application of the principle lacks the required deference.[5] Accordingly, this Court affirms the chancellor’s discretionary denial of Jenkins’s “Rule 12(b) Motion to Quash Process and Dismiss.”
CONCLUSION
¶ 17. Based upon the aforementioned analysis, this Court affirms the Chancery Court of Madison County’s denial of Jen *751 kins’s “Rule 12(b) Motion to Quash Process and Dismiss” and remands this case for further proceedings consistent with this opinion.
¶ 18. AFFIRMED AND REMANDED.
LAMAR, KITCHENS, AND PIERCE, JJ. CONCUR. GRAVES, P.J.,
CONCURS IN PART AND IN RESULT. PIERCE, J, SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, LAMAR AND KITCHENS, JJ. CARLSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., DICKINSON AND CHANDLER, JJ.
PIERCE, Justice, Specially Concurring:
¶ 19. I concur with the majority’s decision to affirm the chancellor’s decision to deny Jenkins’s Rule 12(b) Motion to Quash Process and Dismiss. I write separately, however, to explain my reasoning.
¶ 20. The length of time which this matter has remained opened since its filing is disconcerting. Indeed, the primary purpose behind our procedural rules is “to secure the just, speedy, and inexpensive determination of every action.” See Miss. R. Civ. P. 1.
¶ 21. Nonetheless, our procedural rules are to “be applied as liberally to civil actions as is judicially feasible.” Miss. R. Civ. P. 1 cmt. This Court has determined that a party’s failure to request an extension of time within 120 days of the filing of the suit does not require automatic dismissal. See Webster v. Webster, 834 So.2d 26, 28-29 (Miss.2002) (noting “if the drafters of our rules ... wished to require that motions for additional time in which to serve process be filed within the 120 days, they could have done so”). Rather, if a party fails to serve process upon a defendant within 120 days after filing the complaint, and the party cannot show good cause why such service was not made with in that period, “the action shall be dismissed upon the court’s own initiative with notice to such party or upon motion.” Miss. R. Civ. P. 4(h).
¶ 22. The record does not disclose that any such notice was ever served upon Oswald, only that a Rule 12(b) motion was filed by Jenkins. Therefore, the matter remained open pending a hearing to determine whether or not Oswald could show good cause as to why process had not been served within the prescribed period of time. The chancellor, in her “wise and sound discretion,” found that Oswald had demonstrated a good-cause reason for not effecting process. See Miss. R. Civ. P. 1 cmt.
¶ 23. It cannot be overstated that our trial courts are entitled to “deferential review” in matters that require a discretionary ruling. Rains v. Gardner, 731 So.2d 1192, 1197-98 (Miss.1999). It is clear from the record that the learned chancellor thoroughly considered this matter and then denied the Motion to Quash the Service of Process.
¶ 24. I therefore yield to that finding.
RANDOLPH, LAMAR AND KITCHENS, JJ., JOIN THIS OPINION.

. Jenkins is the only party who petitioned this Court for an interlocutory appeal.

. Jenkins's wife, who corroborated his testimony regarding the meat-market encounter, testified that the land-line phone at the home Jenkins leased was listed in her name.

. Mississippi Code Annotated Section 63 — 1— 7(b) requires new residents with an out-of-state license to obtain a Mississippi driver's license within sixty days of establishing permanent residency. See Miss.Code Ann. § 63-1 —7(b) (Rev.2004).

. Specifically, the chancellor stated:
[m]y problem ... is that there is nothing in the Court file authorizing this large amount of delay in the efforts of [Oswald] to seek and google and find these addresses and large times of delay notifying the Court and/or asking permission of the Court to allow the matter to remain open. The Rules authorize this Court, upon application, to give large amounts of time for the seeking and/or googling and/or looking for persons.
It does not reflect here in the Court file where anyone made any application to my predecessor asking for continued privilege to look for and/or continue this lawsuit against the one remaining defendant, that is Mr. William O. Jenkins, Buddy Jenkins. That is a problem that is a paperwork problem.

. For instance, even the dissent concedes that "a motion for extension of time is not required...." See Dissenting Opinion at ¶ 33. See also Montgomery v. SmithKline Beecham Corp., 910 So.2d 541, 546 (Miss.2005) (a plaintiff who files a motion for additional time for service of process before expiration of the service period is only "more likely [to] succeed in demonstrating diligence than a plaintiff who does nothing.”); Webster v. Webster, 834 So.2d 26, 28-29 (Miss.2002) ("if the drafters of our rules of civil procedure wished to require that motions for additional time in which to serve process be filed within the 120 days, they could have done so.”).