BARNES, J.,
for the Court:
¶ 1. Perriece Collins, the parent and legal guardian and of Shoniqwa Collins, and on behalf of the wrongful-death beneficiaries of Shataja Nikeara Collins, filed suit in Leake County Circuit Court against Dr. Toikus Westbrook (Dr. Toikus), among others,[1] for negligence in the delivery of Shoniqwa’s stillborn baby, Shataja. Dr. Toikus filed a motion to dismiss, claiming insufficient service of process, because the person served with the complaint was his father, Dr. Jesse Westbrook (Dr. Jesse), a dentist in Germantown, Tennessee, who was not authorized to accept service for his son. The trial court agreed, finding the 120-day deadline to serve process had expired, and Plaintiffs had shown no good cause or excusable neglect as to why process had not been timely served. While this Court may not have made the samé decision as the trial court, we cannot say the trial court abused its discretion. Accordingly, we affirm.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶2. On December 16, 2011, Plaintiffs filed their complaint of a wrongful-death claim due to medical malpractice against Defendants. The complaint alleged that on June 30, 2010, nineteen-year-old Shoniqwa was admitted to the Leake County Memorial Hospital emergency room under the care of its staff and Dr. Toikus, complaining of bloody discharge. Shoniqwa was approximately thirty-six weeks pregnant. Plaintiffs claimed that in spite of signs of fetal distress, neither the physician, nor his nurse made any attempt to intervene or deliver the infant, and she was ultimately delivered stillborn.
¶ 3. Counsel for Plaintiffs, Langston & Langston PLLC (Langston), explained that it delegated the responsibility of serving process on Defendants to its former long-time legal assistant. However, as the legal assistant was experiencing “very extreme personal problems during this period of time,” lead counsel Shane Langston *1209 discovered only a few days before thé expiration of the 120-day deadline, as provided by Mississippi Rule of Civil Procedure 4(h), that there had been no process served on Defendants. The trial court docket indicates that summonses for Dr. Toikus and the other defendants were not even issued until April 13, 2012, one day prior to the April 14,2012 deadline.
¶ 4. On April 11, 2012, Langston hired Quantum Process, a professional process-serving company in Hattiesburg, Mississippi, to serve Defendants. Langston told Quantum Process’s manager, Davy Keith, that process had to be served on Dr. Toi-kus on or before April 14, 2012, which was a Saturday. On April 12, 2012,. at 2:55 p.m., attorney Jack Hunt, an associate at Langston, emailed Keith the notice of summons. On Friday, April 13, 2012, at 2:06 p.m., Hunt asked if Keith had “any luck so far?” At 3:23 p.m., Keith emailed Hunt and updated him on the difficulties of finding Dr. Toikus, stating “the chances of locating and serving [Dr. Toikus] today are very slim.” Keith detailed that a Lexis-Nexis search for “Toikus Westbrook” resulted in several possible addresses for him in New Orleans, Louisiana, and Ger-mantown, Tennessee. However, eighteen minutes later, Keith sent an email stating, “I can make this happen but it’s going to be more than I stated. $300. Please confirm.” A confirmation email was then sent back from Hunt to Keith at 3:52 p.m., stating “everything is in motion.”
¶5. Soon after sending this email, Keith testified he called a residential telephone number at a location that matched Dr. Toikus’s last known address in Ger-mantown,, and left a message for “Dr. Toi-kus Westbrook.” Someone called Keith back from the number, and Keith explained he had a delivery for “Dr. Toikus Westbrook.” Initially, the person responded, “he’s not available.” Keith then admittedly employed a technique used in his profession called a “pretext,” and misrepresented to the caller that he had a delivery from “Maxim Physicians,” Dr. Toikus’s employer. Keith claims the person on the phone then said: “Oh, that’s me. You can bring that ■ to me.” The person was on his way to Incredible Pizza in Germantown, and asked if he could meet Keith there. Keith then arranged for Gary Murphree, a process server in Memphis, Tennessee, to.meet the alleged Dr. Toikus Westbrook at Incredible Pizza in Germantown.
¶ 6. On Friday, April 13,' Murphree arrived at Incredible Pizza and asked that the restaurant' page “Toikus Westbrook.”[2] An employee then escorted Murphree to a back room where a gentleman was sitting. Murphree testified when asked if he was “Toikus Westbrook,” the man said “yes,” and Murphree, who had the papers in a box, opened it and handed him the summons and complaint.[3] At this point, Plaintiffs claimed they believed all of Defendants had been timely served by the April 14 120-day deadline, including. Dr. Toikus.
¶ 7. On May 7, 2012, Dr. Toikus filed a motion to dismiss, claiming Dr. Jesse Westbrook, Dr. Toikus’s father, had been served in Germantown instead of him, and therefore the complaint should be dismissed due to insufficient service of process. Ón May 21, 2012, an affidavit in support of the motion to dismiss, executed *1210 by Dr. Jesse on May 7, was filed with the trial court. Dr. Jesse’s affidavit stated that he was a dentist, that he was served with process on-April 13, and that he had no knowledge of this case. It also gave his home address in Germantown.
¶ 8. 'In June 2012, 'Plaintiffs filed a response in opposition to the motion, attaching supporting affidavits from Keith and Murphree. Keith’s affidavit explained how he rán a LexisNexis search to find several addresses and phone' numbers for “Dr. Toikus Westbrook.” Every telephone number for: “Toikus Westbrook” was called, but only the caller at the German-town phone number responded. When Keith told the caller he had a delivery for “Dr. Toikus Westbrook” from Maxim Physicians, the caller responded he was on his way to Incredible Pizza, and asked to be met there. Murphree’s affidavit claimed he served who he believed was Dr. Toikus, and the person identified himself as “Dr. Toikus Westbrook” at the pizza place.
¶ 9. Dr. Toikus filed a reply to Plaintiffs’ response to the motion to dismiss, and attached a second affidavit by Dr.. Jesse, adding more details of the events of April 14. In it, Dr. Jesse acknowledged that he had: “received a telephone call at his home from a man stating he had some important documents regarding physician services for a ‘Dr. Westbrook.’ ” Dr. Jesse claimed he identified himself as “Dr. West-brook,” ■ and told the caller he and his family were headed to dinner at Incredible Pizza. At the restaurant, a man ap~ proached him with a pizza box and pulled out some documents, handing them to Dr. Jesse and stating, “you have now been served.”
1f 10. The first hearing on the motion to dismiss was in June 2012. The hearing is not transcribed • for the' record, but the uncontested affidavit of Jessica Murray, counsel for Plaintiffs, stated that neither Dr. Jesse nor Dr. Toikus attended the hearing and no additional evidence was offered. The trial judge decided to continue the hearing, informing counsel that he would like to hear live testimony from the relevant witnesses.
f 11. At the second hearing on October 31, 2012, Plaintiffs called Keith and Mur-phree to testify, and attorney Shane Lang-ston gave testimony about his firm’s efforts to serve Dr. Toikus. The trial court granted Dr. Toikus’s motion to file an' affidavit, which he submitted to the court on November 26, 2012. In the affidavit, he merely stated that he was a resident of New Orleans, giving his address there, along with his father’s address in German-town, and stated he was never served with process.
¶ 12. On February. 8, 2013, the trial court entered a judgment of dismissal in favor of Dr. Toikus.[4] The court found Dr. Toikus had not been served within the 120-day period, and Plaintiffs had shown no “good cause” or “excusable neglect” to justify an enlargement of time to serve him.[5] Plaintiffs (now Appellants) timely appealed.
*1211 STANDARD OF REVIEW
¶ 13. The appellate court reviews a trial court’s grant or denial of a motion to dismiss de novo. Johnson v. Rao, 952 So.2d 151, 154 (¶ 9) (Miss.2007). However, the “trial court’s - finding of fact on the existence of good cause for the delay in service of process [is] ‘a discretionary ruling and entitled to deferential review’ on appeal.” Triple “C” Transp., Inc. v. Dickens, 870 So.2d 1195, 1197 (¶ 15) (Miss.2004) (citation omitted). “When reviewing fact-based findings, [the appellate court] will only examine whether the trial court abused its discretion and whether there was substantial evidence supporting the determination.” Id. at 1197-98 (¶ 15).
¶ 14. The trial court’s determination of “whether there is good cause for failure to serve process is ‘a discretionary ruling on the part of the trial court and is entitled to deferential review of whether the trial court abused its discretion and whether there was substantial evidence supporting the determination.’” Lewis Entm’t, Inc. v. Brady, 142 So.3d 396, 398 (¶ 6) (Miss.2014) (quoting Rains v. Gardner, 731 So.2d 1192, 1197 (¶ 18) (Miss.1999)). “To the degree that a trial judge’s decision to grant or deny a motion for an extension of time is based upon precept of law, the standard for the [appellate court]’s review shall be ‘plenary’; otherwise, [the appellate court] shall simply apply the' abuse-of-discretion standard.” Rains, 731 So.2d at 1198 (¶ 19) (citation omitted).
ANALYSIS
¶ 15. Appellants argue that Dr. Toikus waived his defense of insufficient service of process because, until he filed an untimely affidavit after the second hearing on the motion to dismiss, ,the testimony had been uncontradicted that Dr. Toikus was timely served on April 13. Appellants argue that even if this Court considers Dr. Toikus’s untimely affidavit, his sworn statement that he was never served with process is overcome by process servers Keith’s and Murphree’s affidavits, which state they thought they did serve Dr. Toi-kus. Appellants also claim that the trial court abused its discretion in denying their numerous requests for additional time under the “good-cause” .and/or “excusable-neglect” standards.
¶ 16. Rule 4(h) provides:
If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed.
“In order to establish that good cause exists for late service, a plaintiff must have made a diligent effort to effect service.” Foss v. Williams, 993 So.2d 378, 379 (¶ 6) (Miss.2008) (citing Montgomery v. Smith-Kline Beecham Corp., 910 So.2d 541, 546 (¶ 15) (Miss.2005)). Instances where good cause exists include: “[W]hen the failure is a result of the conduct of a third person; when the defendant has evaded service of process or engaged in misleading conduct; when the plaintiff has acted diligently; when there aré understandable mitigating circumstances; or when the plaintiff is proceeding pro se or in forma pauperis.” Id. (citing Holmes v. Coast Transit Auth., 815 So.2d 1183, 1186 (¶ 12) (Miss.2002)). If it appears that process cannot be served within the 120-day period, a diligent plaintiff should file a motion for additional time to serve process. “Such diligence would support- an allegation that good cause exists for failure to serve process timely,” Stutts v. Miller, 37 So.3d 1, 6 (¶ 15) (Miss.2010) (quoting Montgomery, 910 So.2d at 545 (¶ 14)). “ ‘Good cause’ can never be *1212 demonstrated where plaintiff has not been diligent in attempting to serve process”; it is a strict standard.[6] Montgomery, 910 So.2d at 545, 548 (¶¶ 13, 24).
¶ 17. Mississippi Rule of CM Procedure (6)(b)(2) authorizes the trial- court to enlarge the 120-day period when the request is made after this deadline upon a showing of “excusable neglect.” The Mississippi Supreme Court has established that “a plaintiff attempting to establish ‘good cause’ must show ‘at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice.’ ” Stutts, 37 So.3d at 4 (¶ 9) (citing Holmes, 815 So.2d at 1186 (¶ 11)).
If 18. Appellants contend that the West-brooks’ affidavits were untimely and insufficient. They complain that in the motion to dismiss, Dr.. Jesse’s affidavit was. not attached but promised as “forthcoming,” and when the affidavit was eventually filed two weeks later, it offered no details or. explanation of what Dr. Jesse said when being served, where Dr. Toikus was, or what he did with the summons after being, served. Appellants also argue that Dr. Toikus never provided sworn evidence that he was not timely served with process. His affidavit, executed two weeks after the second hearing on the motion to dismiss, merely states he was never served with process. Appellants argue this is insufficient because Dr. Toikus does not offer an explanation of the telephone call with Keith, the service of process at the pizza place,. or whether his father delivered the summons to him before April 14. They therefore contend the trial court abused its discretion in accepting the “bare-boned” legal conclusion that Dr. Toikus had never been served with process.
¶ 19. From the record, the trial court could clearly find that Dr. Toikus was not timely served within the 120-day period. Appellants' did not attempt to serve process on Dr. Toikus until two days prior to the expiration of the 120-day deadline, because Langston did not realize its legal assistant had not already served Defendants due to personal problems.[7] Then, on April 13, the process server indicated to Langston that the chances of locating and serving Dr. Toikus on that day were “very slim” because a LexisNexis search showed Dr. Toikus might have more than one physical address — one in Germantown and several prior New Orleans addresses, with the latest one listed as current through April 2012. But in a subsequent email, Keith was more positive, stating he could “make it happen” and “everything is in motion.” Keith contacted Dr. Toikus’s employer, Maxim Physicians, who confirmed to Keith that he lived in New Orleans. However, Keith decided to pursue the Ger-mantown address, and not the correct New Orleans address, telephone number, and *1213 email. As a result, Murphree served the wrong Dr. Westbrook (Jesse) with the complaint instead.
¶20. While a return" of service gives rise to a presumption that service occurred, this presumption is rebuttable. McCain v. Dauzat, 791 So.2d 839, 842 (¶ 8) (Miss.2001) (citing Pointer v. Huffman, 509 So.2d 870, 872 (Miss.1987)). The presumption is rebutted solely by the testimony of the party disputing service. Lampton-Reid Co. v. Allen, 177 Miss. 698, 714, 171 So. 780, 783-84 (1937). Dr. Toikus moved the trial court to allow him to file an affidavit, and his request was granted. The affidavit stated he had never been served with process in this case. Moreover, Dr. Jesse filed two affidavits stating that he, not Dr. Toikus, was served with process at Incredible Pizza. We find the trial court did not abuse its discretion in relying on these affidavits and in finding Dr. Toikus was not timely served.
¶ 21. As to whether “good cause” or “excusable neglect” was shown, Appellants first contend that they filed numerous applications for an extension of time before the trial court, which were never acknowledged, and that this was error. Appellants requested additional time in the following instances: (1) in June 2012, they requested additional time to serve Dr. Toi-kus “in the alternative” in their response to Defendants’ motion to dismiss; (2) in October 2012, during oral argument, they asked for additional time to serve Dr. Toi-kus, again “in the alternative”; (3) in November 2012, they included a section in their post-hearing brief about an extension of time and “good cause” shown; and (4) in December 2012, in their post-hearing rebuttal brief, they requested an extension of time. ■ ■
¶ 22. In order for the trial court 'to allow an extension of time to serve process, the plaintiff must show “good cause” as to why service has not been completed within the 120-day period mandated by Rule 4(h) or “excusable neglect” under Rule 6(b)(2). As the trial court correctly noted in its final judgment, Appellants failed to file a motion for an extension of time before the 120-day deadline. Although Appellants take issue with the trial court’s opinion that the email by Keith, stating that the chance of serving Dr. Toi-kus was “very, slim,” should have “raised the,bar” and motivated counsel to request additional time before the.expiration of the 120-day deadline, we do not find that the trial court overemphasized the earlier portion of the email in .making its ruling.
¶ 23. Appellants cite Jenkins v. Oswald, 3 So.3d 746 (Miss.2009) to show that the lack of an application for an extension of time is not a “fatal flaw,” In Jenkins, the plaintiff was served with' process four years after the 120-day deadline. Id. at 747 (¶ 2). Evidence showed the. plaintiff had attempted to serve process on the defendant at. two physical addresses thought to be the defendant’s dwellings, as well as attempted numerous times to locate his address for many years, without success. Id. at 747-48 (¶¶ 4-5). The plaintiff had not filed a motion for enlargement of time, but the trial court found that testimony showed “reasonably diligent efforts’.’ to serve process within the 120-day period, and “good cause” existed. Id. at 749 (¶ 11); The.trial court denied the defendant’s motion to quash process and dismiss, and the supreme court affirmed. Id. at 750-51 (¶¶ 15,17).
¶ 24; Appellants, citing Foss, argue that good cause and excusable neglect existed in the instant case. In Foss, the plaintiffs counsel learned of local counsel’s failure to serve the defendants two days* before the 120-day deadline. Foss, 993 So.2d at 378-79 (¶¶ 2, 5). All defendants were served before the 120-day deadline except one, *1214 Dr; Foss, who was served on the 121st day. Id. at 379 (¶ 2). The supreme court affirmed the trial court’s denial of Dr. Foss’s motion to dismiss, agreeing with the trial court’s finding that there was sufficient evidence to constitute good cause. Id. at 380 (¶¶ 9-10).
¶ 25. We find that Jenkins is distinguishable from the present case becaúse there was no difficulty in finding Dr. Toikus’s address. Appellants had Dr. Toiküs’s correct New Orleans address, confirmed by his employer, as well as "a Germantown address. The' process servers chose to pursue the Germantown address, instead of New Orleans, in order to attempt service on Dr. Toikus. Keith • states in his affidavit that he called every number listed for Dr. Toi-kus, leaving messages after receiving no answer, and that he received a return phone call back from the Germantown phone number. We note, however, that the LexisNexis search results show that the name ‘Westbrook Jesse L DDS/ OFC”. was listed beside the ■ Tennessee phone number. Keith, therefore, should have been aware of the possibility that he was dealing with a different Dr. Westbrook. Also, the Jenkins court did not hold that the failure to file for an extension of time was acceptable. Rather, the trial court deemed the lack of an extension “problematic,” but the supreme court agreed with the trial court that testimony showed the plaintiff made “reasonably diligent efforts” to serve the defendant, which satisfied the good-cause standard. The efforts to serve process in Jenkins were much more diligent than in the instant case.
¶26. ' Foss is also distinguishable, as noted by the trial court in this cáse. In Foss, ‘ the defendant was served one day late; here, as we have already noted, Dr. Toikus was never served. Further,’ the plaintiffs attorney in Foss did not know service on the defendant was one day late until the defendant filed his motion to dismiss, prompting the plaintiff to file a motion for an extension of time. The trial court made a fact-based finding that the miscommunication between the plaintiffs attorneys over who . was responsible for serving the defendant constituted good faith. Here, there was no miscommunication over who was to serve Dr. Toikus. The only miscommunication was which Dr. Westbrook was served. As. Dr. Jesse was listed as the verified contact for the Ger-mantown phone number, the process server should have been extra conscientious to serve the proper “Dr. Westbrook.” The trial court correctly noted that the process server deceived Dr. Jesse into accepting services and Plaintiffs never filed a motion requesting an extension of time.
¶ 27. We acknowledge that this case has numerous unfortunate and uriusual facts that contributed to a lack of timely service of process. However, “[t]he burden is upon the • plaintiffs to demonstrate good cause for. failure to timely serve process.” Montgomery, 910 So.2d at 547 (¶ 24) (citing Holmes, 815 So.2d at 1185 (¶ 7)). The trial court, correctly noted that Appellants failed to file a motion for an extension • of. time prior to the 120-day deadline. No attempt was made to serve process for the first 116 days. Process was issued for Dr. Toikus, and served on Dr. Jesse, on the 119th day. The process server had information that should have alerted him to the possibility he was communicating. with a different “Dr. West-brook.” Bound by our standard, of review, we cannot say the trial court abused its discretion in finding a lack of good cause or excusable neglect.
!¶ 28. THE JUDGMENT OF THE CIRCUIT COURT OF LEAKE COUNTY IS AFFIRMED. ALL COSTS OF THIS *1215 APPEAL ARE ASSESSED TO THE APPELLANTS.
GRIFFIS, P.J., ROBERTS AND MAXWELL, JJ., CONCUR. ISHEE, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION. IRVING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY LEE, C.J., FAIR AND JAMES, JJ.; CARLTON, J., JOINS IN PART.. CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION,

. Other named defendants included Leake County Memorial Hospital, the Leake County Board of Supervisors, and Edith Vowell, R.N., but the claims against these defendants are not at issue in this appeal.

. It is disputed whether the Incredible Pizza employee paged “Dr. Toikus Westbrook” or "Dr. Westbrook,” but Plaintiffs claim this point is irrelevant because Murphree, in his affidavit, believed in good faith he served "Dr. Toikus Westbrook.”

. On this date Murphree also executed an affidavit of service, swearing that he served the documents to "Toikus Westbrook” on April 13 at 5:23 p.m.

. In January 2013, the trial judge submitted a letter opinion finding against Plaintiffs. However, before a final judgment had been entered, the Mississippi Court of Appeals reversed the same trial judge’s dismissal of a defendant in another case involving insufficient service of process in Lewis v. Forest Family Practice Clinic P.A., 124 So.3d 678 (Miss.Ct.App.2013). The trial court requested the parties submit memoranda discussing the Lewis decision's impact. Subsequently, the Mississippi Supreme Court reversed the Court of Appeals’ decision in Lewis v. Forest Family Practice Clinic P.A., 124 So.3d 654 (Miss.2013).

. While the trial court in its final judgment did not make a specific finding for lack of good cause, it is implicit in the ruling.

. The Mississippi Supreme Court, in Holmes, cites Wright and Miller’s Federal Practice and Procedure treatise regarding the concept of “good cause”:
[G]ood cause is likely (but not always) to be found when the plaintiff’s failure to complete service in timely fashion is a result of the conduct of a third person, typically- the process server, the defendant has evaded service of the process or engaged in misleading conduct, the plaintiff has acted diligently in trying to effect service or there are understandable mitigating circumstances, or the plaintiff is proceeding pro se or in forma pauperis.
Holmes, 815 So.2d at 1186 (¶ 12) (quoting 4B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1137, at 342 (3d ed. 2000)).

. "[W]aiting until the last day to serve process on a defendant does not constitute good cause.” Long v. Mem’l Hosp. at Gulfport, 969 So.2d 35, 40 (¶ 10) (Miss.2007) (citing Powe v. Byrd, 892 So.2d 223, 227 (¶ 9) (Miss.2004)),