COLEMAN, Justice,
dissenting:
¶ 33. Today’s majority opinion drives Mississippi’s appellate standard-of-review jurisprudence- as far off the tracks as one might ever wish to see. Not only does the majority find the trial court erred on an issue we review only for abuse of discretion — the presence of absence of good cause for failure-to serve process — but the majority, even more egregiously, holds the trial court erred in its witness-credibility determinations, which should be subject to reversal only upon a showing of manifest error. Never before today have we held that good cause for delay in serving process exists when the- plaintiff’s attorney entrusted the job of service of process to an employee who failed to take steps to serve process and in the absence of adequate attorney oversight. In fact, today’s case arguably overrules several cases, discussed below, in which we have held the opposite. After,today, an attorney who hands off the job of service of process to an employee and fails to diligently monitor the progress of service can claim good cause despite the failure. Further, the majority tacitly finds error in the trial judge’s determination that a witness who testified in his presence lacked, credibility. Accordingly, I respectfully dissent.
¶ 34. “A trial court’s finding-of fact on the existence of good cause for the delay in *934 service of process has been deemed a discretionary ruling ... and entitled to deferential review on appeal.” Holmes v. Coast Transit Auth., 815 So.2d 1183, 1185 (¶ 6) (Miss.2002) (quoting Rains v. Gardner, 731 So.2d 1192, 1197-98 (Miss.1999)). In reviewing that fact-based finding, the Court examines only “whether .the trial court abused its discretion and whether there was substantial evidence in supporting the determination.” Rains, 731 So.2d at 1197.
¶ 35. The trial court determined in its Final Judgment, and the record confirms, that Collins wholly failed to take any action to serve process until Day 118 of the 120-day period. Collins filed her complaint on December 16, 2011. Therefore, the 120-day period for service of process ended on April 14, 2012. On April 12, 2012, plaintiffs counsel first contacted a process server regarding serving Dr. Toi-kus Westbrook. According to the affidavit of the process server, service was first thereafter attempted at Dr. Toikus West-brook’s known addresses of record in Carthage and Picayune, but the attempts failed. Again according to the process server’s affidavit, he then ran a skip trace which revealed several possible addresses for Dr. Toikus Westbrook, which ranged geographically from Memphis, Tennessee, to New Orleans, Louisiana.
¶ 36. In the case sub judice, Collins’s attorney made no attempt to serve process until 118 of the 120 days had passed, and Coliins did not file a motion to extend the 120-day period until after it had expired. The question, then, we should consider is whether the trial judge erred in finding good cause did not exist for the 118-day delay. I do not think he did. While not dispositive,' I first note the failure of the plaintiff to file a motion for an extension of the 120-day period prior to its expiration, “While there-is no actual requirement that a- motion for additional time be filed, ‘a plaintiff who-prior to expiration of the service period-files a motion representing that he or she has been unable to serve process, will more likely succeed in demonstrating diligence than a plaintiff who does nothing.’ ” Copiah Cty. Sch. Dist. v. Buckner, 61 So.3d 162, 168 (¶ 21) (Miss.2011) (quoting Montgomery v. SmithKline Beecham Corp., 910 So.2d, 541, 546 (¶ 15) (Miss.2005)). As noted by the trial judge, when contacted to serve process two days before the expiration of the 120-day period, the process server informed Collins’s counsel that, in light of the multiple possible addresses for Dr. Toikus Westbrook, “I think the chances of locating and serving him today are very slim.” Despite the warning and having only two days to act, Collins did not file a motion for an extension of the 120-day deadline.
¶ 37. Furthermore, as found by the trial court and as the majority writes, Collins’s attorney entrusted the job of serving process to a legal assistant. Nothing in the record indicates that counsel monitored the progress of the employee in accomplishing the task until April 12, 2012, or Day 118. The failure of counsel to monitor his legal assistant’s progress in completing the assigned task of service of process is at most “simple inadvertence or mistake of counsel,” which does not rise to the level of good cause or excusable neglect. LeBlanc v. Allstate Ins. Co., 809 So.2d 674, 677 (¶ 12) (Miss.2002) (emphasis added) (quoting Watters v. Stripling, 675 So.2d 1242, 1243 (Miss.1996)).
¶ 38. In Heard v. Remy, 937 So.2d 939 (Miss.2006), the plaintiff, Tiffany Heard, filed a complaint against the defendant, Keith Remy, for personal injuries allegedly resulting from a motor vehicle collision. Id. at 940 (¶ 2). Heard filed her complaint and process issued five days before the statute of. limitations expired. However, Heard, failed to serve process before the *935 expiration of the' mandated 120-day time period. Id. After -the expiration of the 120-day period, Heard filed a motion for an extension of time-to serve process, and the trial court granted the motion without making a ruling as to whether good .cause existed for her failure to serve within the original 120 days. Heard successfully served, process during the time allowed in the trial court’s granted extension. Id. at 940 (¶ 3). Remy then filed a motion for judgment on the pleadings,, contending that the statute of limitations ran in .the interim between the expiration of the original 120 days and the trial court granting the extension of time to serve process. Id. at 941 (¶¶ 4, 15). In ruling on the motion and dismissing Heard’s complaint as time-barred, the trial- court farther found that Heard had not shown good cause for failing to effect timely service, of process during the original 120-day period. Id. at 941 (¶ 5). On appeal, we affirmed, holding that the trial court did not abuse its discretion because the evidence showed that the failure to serve stemmed from-a miscommuni-cation between Heard’s counsel and counsel’s own employee. Id. at 943-44 (¶ 19-21).
¶ 39. Like Collins in the ease sub judi-ce, Heard contended that the trial judge erred in finding an absence of good cause for failing to serve process during the 120-day time period. Heard, 937 So.2d at 943 (¶ 19). Also like Collins, Heard’s counsel relied on an employee to see' to it that process was served. Id. at 943 (1120). However, unlike today’s case, in Heard the plaintiff never attempted service- within the 120-day period, Id. at 944 (¶ 20), where here, Collins finally attempted service of process after 118 days had elapsed. I do not view the two-day difference as much of a distinction. The question the trial judge answered, and that we should review, is whether Collins has demonstrated good cause for failure to serve process within the 120-day period when counsel did nothing for the first 118 days and counsel’s neglect demonstrates a lack of diligence and led to the failure to timely serve. The failure that -leads to the quest for good cause is not the failure to attempt service within 120 days,- but the failure to achieve service; One might -ask whether the majority would find good cause if a plaintiff failed to attempt service until the 23rd hour of the 120th day, or the 12th hour of the 120th day, or the beginning of the 120th' day, and so forth. - Whether the delay equals 118 of the 120 days or all of the 120 days,' under Heard the answer is the same. In holding that the trial court did not abuse its discretion-in finding no good cause existed,- the Heard Court wrote, “The failure to attempt process on Remy may - have been the result of a lack of communication -and follow-up within the offices of Heard’s counsel. The continuing failure to attempt service -for four months, without adequate explanation, shows a lack of diligence beyond excusable - neglect.” Id. at 944 (¶ 20). Tn the case sub judice, Collins fails to explain why her counsel did not communicate and follow-up with the legal assistant assigned to effect service of process.- That said legal- assistant may have been suffering through some sort of personal issues -does not explain counsel’s inadvertence arid failure to monitor. In the instant case, Collins demonstrated a marked lack of diligence by doing nothing for 118 days and' by failing to file a motion for an extension of the 120-day deadlirie upon learning at the time that process had not in fact been served.
¶ 40. • In In re Holtzman, 823 So.2d 1180 (Miss.2002), plaintiff attempted to show good ■ cause. by contending that the summons and complaint had been misfiled by a new file clerk. Id. at 1182 (¶ 4).- The Holtzman Court characterized the events as “clear an example as one could wish .of *936 ‘simple inadvertence or mistake of counsel.’ ” Id. at 1183 (¶ 9). In language that negates the majority’s attempt to excuse Collins’s 118-day failure by writing that Collins had no reason to believe process has not been served, (Maj. Op. at ¶ 26), the Holtzman Court continued, “[O]rdinary attention to his caseload would have led Ward to notice that he had received no answer from Grand Casino and to check his case file.” Holtzman, 823 So.2d at 1183. While, again, Collins asserts that the legal assistant tasked with serving process was suffering through personal problems that affected her performance, the lack of service of process was something that would have been discovered sooner with what the Holtzman Court described as “ordinary attention.”
¶ 41. In Copiah County School District v. Buckner, 61 So.3d 162 (Miss.2011), the Court found an abuse of discretion, reversed the trial judge’s failure to dismiss a case for failure to timely serve process, and rendered judgment in favor of the defendants. Charles Buckner filed a personal injury complaint against the Copiah County School District and Kenneth Funches, a bus driver, after he allegedly received injuries from a collision with a school bus driven by Funches. Buckner, 61 So.3d at 164 (¶ 3). Buckner had summonses issued for the defendant, but failed to serve them. Id. More than a year after the filing of the complaint, the court ordered a status conference with Buckner’s counsel. Id. at 164 (¶ 4). Prior to the hearing, Buckner’s counsel filed an application for a clerk’s entry of default with an accompanying affidavit averring that process had been served. Id. Apparently, the process server reported to Buckner’s counsel that process had been served when it in fact had not. Id. at 164 (¶ 5). When Buckner’s counsel learned the truth, he withdrew his application for entry of default. On February 3, 2009, the trial judge orally granted additional time to serve process. Id. at 164-165 (¶¶ 5, 7). Buckner served the school district and Funches on June 4 and June 5, 2009, respectively. Id. at 165 (¶ 7). The extension of time granted by the trial court ended on June 2, 2009. Id. at 165 (¶ 10). Buckner’s counsel claimed that he did not receive a copy of the order granting time until June 4, 2009, despite attempts by his legal assistant to obtain it. Id. at 165 (¶ 9). The legal assistant testified at the hearing on the defendants’ motions for summary judgment that someone at the clerk’s office had told her the order had been signed and promised to fax it to her, but that she never received a faxed copy until June 4. She told Buckner’s attorney that she had been told the order had been signed, but the attorney did not ask when. Id. at 165 (¶10). The trial judge found that good cause existed for Buckner’s failure to timely serve process and denied the dispositive motions. Id. at 165 (¶ 11).
¶ 42. On appeal, the Buckner Court held that the trial court had abused its discretion and reversed and rendered the case. Id. at 171 (¶ 31). In holding that no good cause existed, the Court wrote as follows:
Buckner’s counsel asserted that he had relied upon the process server’s assertion that the defendants had been served. Counsel’s belief that service had been achieved was evidenced by his filing of an affidavit to that effect with an application for entry of default when the defendants had failed to answer. However, a more attentive review of the file would have informed counsel that, because there was no return of service for the defendants, the reason they had failed to answer was that they had not been served with process. Evidently, Buckner’s counsel did not check for a return of service until after the statute *937 of limitations had expired, after the trial court had set a date for a status hearing, after he had filed an application for entry of default, and after opposing counsel, upon discovering the lawsuit, had notified him that their clients never had been served. In Heard, the Court found that counsel’s lack of communication and follow-up concerning service constituted mistake or inadvertence. Heard, 937 So.2d at 944. The conduct at issue here likewise manifested a lack of diligence and amounts to mistake or inadvertence. We find that the trial court abused its discretion in refusing to set aside the extension of time, because Buckner did not present substantial evidence to support a finding of good cause for the failure to serve the defendants within the 120-day period.
Buckner, 61 So.3d at 168 (¶ 20). Accordingly, the unanimous Buckner Court reversed the discretionary ruling of the trial court finding good cause for failure to serve process because, despite representations from the process server that process had been served, counsel did not check for a return of service of process. If the described failure to monitor in Buckner mandated a reversal of the trial judge’s discretionary finding of good cause, then the failure to monitor in today’s case suffices to uphold the trial court’s discretionary finding of a lack of good cause. The majority would distinguish Buckner due to the fact that the attorney’s inadvertence in Buckner included relying on representations from a process server rather than an employee, but the distinction works against the majority. If the Court held that a trial court abused its discretion in finding good cause existed when counsel had faded to follow up on representations from a nonemployee, then certainly we should — and clients should — be able to expect attorneys to keep track of their own employees’ performance or nonperformance, as the case may be, of their assigned tasks, and hold that a trial court did not abuse his discretion in finding an absence of good cause when an attorney fails to monitor the progress of his employee.
¶ 43. Here, Collins’s reliance on Foss v. Williams, 993 So.2d 378 (Miss.2008), to excuse the conduct of his legal assistant is misplaced for two reasons. First, Foss does not stand for the proposition that taking speedy action at the close of the 120-day window conclusively establishes good cause. Instead, the Foss Court merely affirmed that a trial court’s decision “that it would not dismiss Williams’ complaint with respect to Dr. Foss based on [the trial court’s]' finding that good cause existed for Williams’ failure to serve process timely” was not an abuse of discretion. Foss, 993 So.2d at 380 (¶ 9). Second, Foss dealt with a miscommunication between plaintiffs counsel and associated counsel as to who would be responsible for effecting service. Id. at 379 (¶ 6). In the instant case,'the trusted legal assistant was directly employed by Collins’ counsel, and she simply failed to carry out the duty assigned to her by her employer. For 118 days, counsel failed to follow up with his employee to ensure that service had been commenced against opposing parties. Such an oversight cannot be said to be diligent such that a plaintiff may claim “good cause why such service was not made” within the 120 days provided by Rule 4(h).
¶ 44. In today’s holding that the plaintiff demonstrates good cause for failure to serve process because the employee of plaintiffs counsel “failed to. complete the assignment” of serving process, (Maj. Op. at ¶ 22), the majority issues a holding contrary to our standard of review and contrary to all of the above-described cases that hold that similar failures by process servers and attorneys’ employees, do not *938 establish good cause for failure to serve process. What we heretofore have deemed simple inadvertence and mistake of counsel not rising to the level of good cause has now become good cause. Attorneys who fail to pay “ordinary attention” to their caseloads may not lay claim to good cause and be freed from the consequences of not paying attention. Defendants in aging cases, with the memories of witnesses fading and evidence aging, will be subject to service of process for a longer period of time, even though the cause for the delay before today did not amount to good cause.
¶ 45. The majority in large part bases its position that good -cause .for failure to serve the correct Dr. Westbrook rests in the conduct of Dr. Jesse Westbrook when the process server spoke with him in an attempt to locate Dr. Toikus Westbrook. The process server testified that Dr. Jesse Westbrook identified himself as Dr. Toikus Westbrook. The trial judge heard the same testimony and observed the process server as he testified. In his final judgment, the trial judge wrote as follows concerning whether Dr. Jesse Westbrook misrepresented his identity:
This Court finds that once process server, Davy Keith, had located, an address for Dr. Toikus Westbrook in German-town, Tennessee, he contacted Gary Murphree, a process server in German-town, Tennessee, to serve process on Dr. Toikus Westbrook. Mr. Keith called Dr. Jesse Westbrook and left a message. Thereafter, Dr. Jesse Westbrook returned Mr. Keith’s call and told Mr. Keith that Dr. Toikus Westbrook was “not available.” ' Mr. Keith explained that he had a delivery for Dr. Toikus Westbrook from Dr. Toikus Westbrook’s employer, Maxim Physicians. Although the dialogue between Mr. Murphree and Dr. Jesse Westbrook at the pizza parlor where- they met is disputed, Plaintiffs assert that Dr, Jesse Westbrook told him he was Dr. Toikus Westbrook. However, on cross-examination, Mr. Murphree acknowledged that their strategy was a subterfuge designed to deceive Dr. Jesse Westbrook to induce him to appear at the pizza parlor to receive the summons. In addition, Dr. Jesse Westbrook testified by affidavit that Mr. Murphree asked him if he was “Dr, Westbrook,” who, of course, he is.
The trial judge as finder of fact on the issue made credibility determinations and did not credit the testimony that Dr. Jesse Westbrook had misidentified himself as Dr. Toikus Westbrook. We leave “the finding of fact on the existence of good cause or excusable neglect for delay in serving process under Rule 4(h).” Stutts v. Miller, 37 So.3d 1, 3 (¶ 7) (Miss.2010). What the majority described as a record that “shows overwhelmingly that Collins’s failure to make timely service of process on Dr; Toikus Westbrook was caused entirely by ‘the conduct of a third person’ ” ,(Maj. Op. at ¶ 23), is rather testimony from one witness that the trial judge heard, observed, and rejected on grounds of credibility. We reverse the trial judge as finder of fact in the determination of good cause only when the trial judge’s “discretion is abused or is not supported by substantial evidence,” and neither is the case today.
¶ 46. More to the -point — the majority is reversing the trial judge on an issue of witness credibility. In order to find the trial judge erred in finding no good cause or excusable neglect, the majority finds— as a matter of fact — that Dr. Jesse West-brook acted to trick the process server into thinking that he, Jesse, was Toikus. The majority refers to Dr. Jesse West-brook’s “subterfuge,” and writes that he engaged in “deliberate deception,” and even goes so far as to find: Dr; Jesse Westbrook guilty of “corrupt conduct” and *939 “treachery.” (Maj. Op. at 23). As shown in the above-quoted excerpt from the trial judge’s ruling, the trial judge considered the argument and rejected it because he did not find the process servers to be credible. I can find no reported case wherein the Mississippi Supreme- Court has considered the deference owed to a circuit court judge making credibility determinations in the context of the failure to serve process. Of course, as cited above, the general standard of review for findings of fact in the Rule 4(h) context is that of abuse .of discretion and substantial evidence, but in every other context I could identify, we consider credibility determinations made by the finder of fact to be in error only upon a showing of manifest error, that the findings of the trial court are clearly erroneous, or that the findings are against the overwhelming weight of the evidence. In reviewing challenges to the use of peremptory strikes , under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), we have ac-knowlédged the role of the trial judge in making credibility determinations and “will not • overrule a trial court on a Batson ruling unless the record indicates that the ruling was- clearly erroneous or against the overwhelming weight of the - evidence.” Hicks v. State, 973 So.2d 211, 218 (¶ 23) (Miss.2007) (quoting Thorson v. State, 721 So.2d 590, 593 (¶ 4) (Miss.1998)). Chancellors often act as the' fact-finders in litigation pending before them, and we have clearly established that when reviewing a chancellor’s credibility determinations, “Our standard of reviéw is indeed deferential, as we -recognize that a" chancellor, being the only one to hear the testimony of witnesses and observe their demeanor, is in the best position to judge their credibility.” Owen v. Owen, 928 So.2d 156, 168 (¶ 35) (Miss.2006) (quoting In re Estate of Carter, 912 So.2d 138, 143 (¶ 18) (Miss.2005)). We afford great deference to administrative agencies’ determinations -of witness credibility. See McFadden v. Miss. State Bd. of Med. Licensure, 735 So.2d 145, 157 (¶ 46) (Miss.1999). Circuit court judges sitting without juries are afforded the same deference as chancellors. City of Jackson v. Perry, 764 So.2d 373, 376 (¶ 9) (Miss.2000).
¶ 47. To be clear, I do not think the trial judge in the case sub judice abused his discretion — if indeed abuse of discretion is the correct standard — in noting the duplicitous methods employed by the process server and therefore finding the testimony of the process server incredible. Under any standard of review higher than de novo, I cannot — not having observed the witness or been present for his testimony — agree that the trial judge erred, in finding against the plaintiff on the factual question of whether Dr. Jesse Westbrook misled the process server. I certainly cannot so easily as does the majority make that credibility determination from the typed record. (The majority does not ¡explicitly find the testimony in question to be credible or incredible, but the majority cannot ascribe the above-cjuoted terms to Dr. Jesse Westbrook’s alleged actions and hold, as it does, that the trial judge erred oh the issue without finding it credible and, correspondingly, that the trial judge erred in ruling otherwise.) However, I would also clarify that, in the context of reviewing whether the trial court properly found good cause-or the lack thereof for the timely service of process, the trial court’s determinations of witness credibility will be reversed only upon a showing that they are clearly erroneous,
¶ 48. For the foregoing reasons, I dissent.
LAMAR, J., JOINS THIS OPINION.